### Bloomington City Railway v. J. Holt Gates.

JURY—*The Province of, Etc.*—The peculiar province of the jury from their superior advantages in seeing the witnesses, to weigh the evidence, find and determine disputed questions of fact.

Assumpsit, breach of contract. Appeal from the Circuit Court of McLean County, the Hon. THOMAS J. TIPTON, Judge, presiding. Heard in this court at the November term, 1897. Affirmed. Opinion filed February 9, 1898.

ROWELL, NEVILLE & LINDLEY, attorneys for appellant.

RALPH F. POTTER, attorney for appellee.

Mr. Justice Burroughs delivered the opinion of the Court.

Appellee, a 'dealer in electrical machinery and supplies, made a contract in writing, with appellant, a corporation engaged in the operation of a street railway in the city of Bloomington, Illinois, of which the following is a copy:

"Proposition made this 22d day of September, 1894, by J. Holt Gates, of 1139 and 1140 Monadnock Building, Chicago, Illinois, hereinafter called the contractor, to the "Bloomington City Railway," of Bloomington, Ill., hereinafter called the purchaser.

"The terms and conditions of this proposal are such that the contractor agrees for and in consideration of the sums hereinafter stated, to furnish f. o. b. cars, Manchester, Conn., an electric plant, as specified herein under the head of specifications.

"The within proposition, when accepted, is the agreement between the parties hereto, and it is agreed and distinctly understood that all previous communications between said parties, either verbal or written, contrary to the provisions hereof, are hereby withdrawn and annulled; and that no modification of this agreement shall be binding upon the parties hereto, or either of them, unless such modification shall be in writing, duly accepted by the purchaser, and approved by the contractor.

"Patents.—The contractor shall, at its own cost and expense, defend any and all suit or suits that may be instituted by any party against the purchaser for the illegal infringement of a patent or patents, when such alleged infringement shall consist in the use of any apparatus, machinery or device, or parts thereof, manufactured or sold by the contractor, and immediate notice of the institution of such suit or suits shall be

given in writing by the purchaser to the contractor, and the purchaser shall permit the contractor, through its counsel, to defend the same, and shall give all needed information, assistance, and authority, to enable the contractor to do so; and thereupon, in case of an award of damages in such suit or suits, the contractor shall pay such award or replace the apparatus or device with other equally as good; but the contractor shall not be bound to defend any suit or suits, nor pay any damage therein, when the same shall arise by reason of the use of parts not furnished by the contractor.

"GUARANTEE.—The contractor guarantees all apparatus it furnishes to be free from defect of labor and material, and that it will replace defective apparatus, provided an inspection proves the claim. The contractor further guarantees that the apparatus is of superior strength and design, and that it will work to rated capacity, with a minimum of heating and sparking, and will do its work successfully when kept clean, dry and in good condition, provided purchaser employes competent help for its operation. The contractor also guarantees that all work shall be done in a first class manner, and that all material furnished shall be of the best grade.

"TITLE AND OWNERSHIP.—The title and ownership of the property called for and furnished, under the terms of this contract, shall remain in the contractor until the full and final payment therefor shall have been made by the purchaser according to the terms agreed upon, and until the notes, if any, shall have matured and been settled in full. In case of default of any of the payments above provided for, the contractor may repossess itself of the above mentioned property, wherever found, and shall not be liable in any action of law, on the part of said purchaser, for such reclamation of its property, nor for the repayment of any

money or moneys which may have been paid by said purchaser in part payment for said installation and equipment.

"PROTECTION OF CONTRACTOR'S PROPERTY.—The purchaser agrees to protect the property of the contractor until plant is accepted and to make good any loss to the contractor occasioned by a fire or by carelessness, or malicious injury by purchasers employees.

"LOCATION AND EXTRA WORK.—The location of all apparatus, instruments, wiring outlets, etc., may. be specified herein, and all costs occasioned by any change or modification will be an extra charge against purchaser. Purchaser agrees to give written order to cover any such change or modification. Purchaser is also to provide suitable openings for ingress or egress of machinery.

"RIGHTS OF WAY AND PREVENTATION OF DELAY.—The purchaser agrees to procure for the contractor all the necessary rights of way, and authority for the installation of the plant as per contract, and also agrees to afford to the contractor such facilities as will enable the work to proceed without interruption from its commencement until completion. The purchaser further agrees to protect the contractor against financial loss arising from the lack of necessary rights of way and authority or., from delays on the part of the purchaser in complying with any of the conditions of this contract.

"STARTING OF PLANT.—Should the purchaser require the dynamos to be put in operation before entire completion of work, the plant, as affecting terms of payment, shall be considered as having started in accordance with the terms of the contract. All operating ex-penses, such as labor, coal, oil, carbons, etc., are to be paid by purchaser from date plant starts.

"DELIVERY AND COMPLETION OF WORK.—To be (delays by strikes, fires, accidents or other unavoidable causes excepted) as follows:

"SPECIFICATIONS—ELECTRIC PLANT.

"The purchaser will furnish and erect upon suitable foundation, furnished by purchaser, at the power house at Bloomington, Ill., the following:

"*Dynamos.*—Direct coupled dynamos; one belted Mather Compound 100, h. p. 550, and necessary pulley.

"*Connections to switchboard.*—The contractor will furnish the necessary labor and materials for cable connections from dynamo terminals, to buss-bars of switchboard.

"*Switchboard and instruments.*—The ———— and erect at a convenient point in dynamo room a neat and substantial ———— switchboard, upon which it will mount the following indicating and regulating instruments, the same being the necessary equipment for a plant such as is herein contemplated:

```
"One Rheostat ......................  ......
One Dynamo Ammeter...................  Amteres each.   Weston.
One Circuit      "     ....................:     "      "
One Voltmeter, Weston.
.... Differential Voltmeter.
.... Dynamo switch, double pole....................Ampres each.
One    "      "    triple   "     ........  .... ......Ampres each.
.... Feeder    "    double  "     ..................... "      "
....   "       "     "      "     .........  .........  "      "
One Circuit Breaker.   Westinghouse.
.... Sets Buss-bars and Connectors.   Necessary Safety Fuses.
.... Ground Detector.   Necessary Pilot Lamps.
```

"*Additional apparatus.*—The contractor will further guarantee that the machine shall run separately and in multiple with either Westinghouse or Short machines, which the purchaser had in his power house, or run all the machines in multiple—namely: Short, Westinghouse and Mather. The contractor shall furnish the

necessary german silver wire and switches, if any are required, to make the machine run.

"*Amount.*—For and in consideration of the agreements herein contained on the parts of J. Holt Gates, Chicago, Illinois, The Bloomington City Railway (herein called the purchaser) agrees to pay to J. Holt Gates the sum of sixteen hundred ($1,600) dollars, for the within specified apparatus delivered as per specifications.

"*Terms of payment.*—The above sums shall be payable as follows: $500 in cash, sixty days after delivery; $450 in ninety days note (properly executed) from date of delivery with legal interest.

"Four 60 H. P. Daft Generators, seven 30 H. P. Daft Motors, five Extra Armatures; this material F. O. B. cars Bloomington and Milwaukee.

"*Special services.*—The purchaser further agrees to pay the following additional charges:

"1. For special services of engineer, board and expenses per day, and traveling expenses to and from —————— payable weekly upon presentation of voucher by J. Holt Gates.

"2. The purchaser agreeing to furnish necessary help required by our engineer.

"Respectfully submitted,<br>
"J. HOLT GATES,<br>
"By W. F. CAMP, JR.

"Acceptance.

SEPTEMBER 28, 1895.

"J. Holt Gates, 1139–1140 Monadnock Bld'g, Chicago:

"Your proposition to furnish apparatus as per above specifications is hereby accepted at the prices and upon the terms and conditions named herein.

"Yours truly,<br>
"THE BLOOMINGTON CITY R'Y,

"Attest:                     "W. H. PATTERSON,

"——————                  "Gen'l Mgr."

About the middle of February, 1895, appellee delivered to appellant the dynamo and machinery named in the contract except a paper pulley worth $25, and a circuit breaker worth $37. At the request of appellee, appellant supplied these two items at the price named. Appellant built the foundation, and set the dynamo thereon, as provided by the terms of the contract. Appellee furnished appellant a plan of the foundation, giving dimensions.

On March 2, 1895, this machinery was started by appellant, assisted by C. E. Hutchings and H. J. Hoagland, electrical experts from Chicago, representing appellee and the Mather company, manufacturers of the dynamo respectively. After running the machine a few hours, the belt connecting it with the engine flew off and was so injured as to prevent further running until another belt could be secured.

About March 22, 1895, Mr. Hutchings again came to Bloomington, and started the machinery in question. In the meantime, by moving the foundation of the dynamo, the distance between it and the engine had been increased, and another belt had been procured by appellant. At this time the machinery ran to the satisfaction of both Mr. Hutchings and Mr. Patterson, manager of appellant corporation.

Shortly after this some complaints were made by appellant to appellee, about the brush-holders, and that the machine leaked oil, and other matters connected with the armature.

In June, 1895, appellee came to Bloomington and saw the machinery there, and in conversation with Mr. Patterson, the manager, said, "The armature was all right, yet if appellant would pay him $500 on account, he (appellee) would order sent to appellant from the factory a new armature."

Appellant never paid anything on account, and the

new armature was never ordered or delivered.   On April 19, 1895, when the cash payment came due, according to the terms of the contract, appellee wrote to appellant, stating that the complaints made about this machine were groundless and demanded the return of the machine sold appellant, if the same was unsatisfactory.   To this appellant replied as follows:

"BLOOMINGTON, ILL., April 23rd, 1895.

"MR. J. HOLT GATES, 1139 Monadnock Bld'g, Chicago, Ill.

"DEAR SIR:   For reply to your favor of the 19th, I beg to say that "if the machine is not satisfactory to ship to Chicago" is not a practicable one.   We made the contract with you for this machine, because we needed it to run our cars.   We have expended a great deal of time and considerable money in attempting to make it carry out your guaranty.   It has thus far failed to meet the requirements of your contract.   We have explained to you fully the nature of the difficulty and it is your business to remedy it.   You have no right to ask us to undo all that we have done, throw away all the money we have spent in installing this machine, and leave ourselves without motor power to run our cars.   If you fail to do it, we will be compelled to meet the difficulty as best we can, and charge the expense to you.   As we have repeatedly told you, whenever the machine fulfills the requirements of the contract we will be ready to settle.

"Yours truly,

"THE BLOOMINGTON CITY RAILWAY,

"W. H. PATTERSON, Gen. Mgr."

Appellant continued to use the machine, but failed to pay appellee the contract price, or anything thereon.

On January 22, 1897, appellee brought this suit in assumpsit, against appellant, in the Circuit Court of McLean County, in his declaration, setting up the said

written contract, and averring performance thereof, on his part, and a failure on part of appellant to perform its part of said contract, adding thereto the appropriate "common counts."

To this declaration appellant filed a plea of general issue to all the counts thereof, and several special pleas; and appellee filed replications thereto. A trial was had in said Circuit Court by jury, and a verdict returned for appellee for $1,687.32. Upon which the Circuit Court, after overruling appellant's motion for a new trial, gave judgment; from which appellants appeal to this court, and here contend that the verdict is contrary to the evidence, the damages are excessive, the Circuit Court erred in its instructions to the jury in refusing proper instructions requested by appellant in allowing improper evidence to be given to the jury and in excluding proper evidence offered.

The principal complaint which counsel for appellant make in their brief filed in this case is that the amount of the judgment is excessive. The court below having given appellee a judgment for the contract price of the machinery sued for (less the price of the pulley and "circuit breaker") and interest thereon at five per cent substantially, from the time the machine ought to have been paid for, according to the terms of the written contract sued on, up to the date of the trial. And counsel for appellant vigorously insist in their brief in this court that the judgment is too large, by some $784. The principal items for which, it is contended, appellant should have been credited, is the armature, $500; a leather belt, $147; and some pulleys and a "circuit breaker," worth $137; on these contested claims, the evidence in the record is conflicting, and if we figure the amount of the verdict correctly, the jury must have allowed at least, say $25 for one pulley, and about $37 for "circuit breaker" but disallowed for the belt and

armature; and they found for appellee on the other items.

It is well understood by courts and the legal profession that it is a peculiar province of the jury, from their superior advantages in seeing the witnesses, to weigh the evidence, and find and determine disputed questions of fact; and we are unable to say from reading the evidence in this case that the verdict shows that the jury were actuated by passion or prejudice, or have found incorrectly.

As to the rulings of the trial court, on the evidence, we think they were free from errors. Persistent claim is made by counsel for appellant that the trial court gave erroneous instructions, and under this claim they cite us to the case of Mears v. Nichols, 41 Ill. 207. As we view it, there is much difference in the fact in that case from those in the case at bar. In the Mears case the appellee sued for labor and materials used in the construction of a turbine wheel, which he had guaranteed would do certain work, and give satisfaction, with the further provision in the contract that in case the wheel was not satisfactory to the buyer, the seller should remove it, after paying for materials supplied by the buyer. The wheel failed to do the work and give satisfaction, and the buyer had furnished the material for its construction. Without offering to pay the buyer for the materials, according to contract, the seller sued for the purchase price. While the case at bar is upon a written contract which provides, without condition, that appellee shall deliver a certain specified machine and appliances at a specified price. It contains no provision that appellee shall reimburse appellant for labor performed, or materials used in the machinery in question. It is true the contract does expressly provide. "In case of default in any of the payments above provided for, the contractor (appellee) may repossess itself

of the above mentioned property, wherever found, and shall not be liable in any action at law, on the part of said purchaser, for such reclamation of its property, nor for the repayment of any money or moneys which may have been paid by said purchaser, in part payment for such installment and equipment." And it also provides that no variation from its terms shall be binding, unless in writing signed by both parties. But this right in the contract for appellee to retake the machine and appliances sold and delivered to appellant was optional alone with appellee and for his benefit alone, to secure payment.

Hence instructions that would announce a correct rule of law, applicable to the facts in the Mears case, would not necessarily apply to the facts in the case at bar.

This case is very much like the case of Fleury & Co. v. James W. Tufts, 25 Ill. App. 101, decided by this court. We do not want to be understood as holding that appellant, under the contract in this case and the issues presented by the pleadings, could not recoup whatever amount it could show the machinery in question was worth, less than the contract price, and the reasonable value of the additional articles and labor furnished, in its reasonable efforts to make said machinery come up to the kind and character described and guarantied in the contract of purchase, by reason of its being defective in labor and material, as specified in the contract, provided the evidence established that the machinery and appliances furnished was so defective.

The jury and the trial court have found from the evidence the facts in this regard against the contention of appellant, and we can not say in this they have erred; or that the instructions of the trial court were such as to prejudice the appellant before the jury, or

that the refused instructions ought to have been given.

On the whole record, we think the verdict and judgment of the trial court are a fair and just disposition of the issues involved herein, between the parties to this record; and so we affirm the judgment of the Circuit Court of McLean County herein. Judgment affirmed.